Hartman v. State Fair Ass'n.

HATTIE HARTMAN *v.* TENNESSEE STATE FAIR ASSOCIA-
TION ET AL.

*(Nashville.* December Term, 1915.)

1. **THEATERS AND SHOWS.** Liability of Amusement conces-
sionary.

The general concessionary as to amusement devices from a State
fair association, who, for a percentage of the receipts, let priv-
ileges to operate particular devices to subconcessionaries, hav-
ing control of the amusements on the grounds and the selection
of the attractions and of their operators, was under duty to use
reasonable care to see that a device for the carriage of passen-
gers, stimulating wave motion, called an "Ocean Wave," was
reasonably safe. (*Post, p.* 156.)

Cases cited and approved: Richmond, etc., R. Co. v. Moore, 94
Va., 493; Turgeon v. Connecticut Co., 84 Conn., 541; Bernier
v. Woodstock Agri. Soc., 88 Conn., 558; Sebeck v. Plattdeutsche
Volkfest Verein, 64 N. J. Law, 624; Stickel v. Riverview Park
Co., 250 Ill., 452; Hollis v. Kansas City, etc., Ass'n, 205 Mo.,
508; Thornton v. Maine State Agrl. Fair, 97 Me., 108; Texas
State Fair v. Brittain, 118 Fed., 713; Johnson v. Hot Springs
Land & I. Co., L. R. A., 1915 F.; Babick v. Riverview Park Co.,
256 Ill., 24; Thomas v. Springer, 134 App. Div., 640; Reisman
v. Public Service Corp., 82 N. J. Law, 464.

Cases cited and distinguished: Thompson v. Lowell, etc., St.
R. Co., 170 Mass., 577, Wodnik v. Luna Park Amusement Co.,
69 Wash., 638.

2. **THEATERS AND SHOWS.** Operator of amusement device.
Duty of care.

The immediate operator of an amusement device at a State fair
carrying passengers, who leases the privilege to operate from
the general concessionary from the fair for a share of the

Hartman v. State Fair Ass'n.

receipts, is charged with the duty to his patrons of maintaining the place and device in a safe condition. (*Post, pp.* 156, 157.)

Cases cited and approved: Scott v. University, etc., Ass'n., 152 Mich., 684; Bole v. Pittsburg Athletic Co., 205 Fed., 468; Smith v. Cumberland, etc., Soc., 163 N. C., 346.

3. **THEATERS AND - SHOWS.**    Action for personal injuries. Question for jury.

In an action for personal injuries by the patron of an amusement device at a State fair against the fair association, its general concessionary, and the latter's subconcessionary, where plaintiff's ticket purported to be issued by the general concessionary, the question whether he or the subconcessionary was the immediate operator of the device was for the jury. (*Post, pp.* 157, 158.)

Case cited and approved: O'Rourke v. Street R. Co., 103 Tenn., 124.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and *by certiorari* to the Court of Civil Appeals from the Supreme Court— THOS. E. MATTHEWS, Judge.

W. A. LAWRENCE and JOHN T. ALLEN, for plaintiff, Hattie Hartman.

SAM'L N. HARWOOD, for defendant Bogle, Exrx.   J. B. Davis.

PENDLETON & DEWITT, for defendants Kennedy & State Fair Ass'n.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The suit was instituted by Hattie Hartman against the Tennessee State Fair Association, C. T. Kennedy, and others, to recover damages for personal injuries sustained by her in the collapse, because of negligence, of an amusement contrivance, known as the "Ocean Wave," operated on the grounds of the association during the State fair in October, 1913.

The action, so far as it affected the Tennessee State Fair Association, was dismissed; but the case went to trial to test the liability of Kennedy. A motion of the latter for a peremptory instruction that there was no liability on his part was sustained by the trial judge, and his ruling was affirmed by the court of civil appeals; but we are satisfied that this action of that court was an inadvertence, the details respecting which need not be recited. Miss Hartman has petitioned for a review on writ of *certiorari*.

It appears that a part of the fair grounds was set apart for various kinds of shows and amusements; that the amusement privilege on the entire grounds was let to Kennedy, who in turn sublet privileges to operate amusements to various persons. He granted to J. B. Davis the right to bring in and operate the Ocean Wave, which was a pleasure riding device, operated by an engine and in such way that, moving in a circular course, one side dipping down while the other side was raised, a wavelike effect was produced. The

passengers were seated on a circular platform about eight feet above the surface of the ground, and they ascended by climbing steps. Miss Hartman purchased a ticket, and, after taking a trip, she started to descend, and when she was approaching the edge of the platform for that purpose, the steps broke and the platform suddenly gave down. She fell to the ground, and other passengers fell on her. She became unconscious and suffered a considerable physical injury.

Kennedy, under his contract with Davis, received thirty per cent of the gross receipts from the operation of this contrivance, and through his own agent sold the tickets, thus controlling the financial end of the particular enterprise. This ticket seller, on the inquiry of Miss Hartman, a lady of considerable avoirdupois, assured her of the safety of the Ocean Wave.

The other employees engaged about the machine and in its operation were those of Davis.

It is insisted by counsel of appellee that Kennedy did not have any proprietary interest in the machine, and had nothing to do with the manner of its operation, and that therefore, he is to be deemed the mere licensor or landlord of its operator, and under no duty to those who patronized the attraction, and that Davis was an independent contractor for whose negligence appellee is not to be held to respond.

Kennedy, as concessionary, held the sole right or exclusive privilege of bringing and operating amusements in the fairgrounds. We think it cannot be

maintained, in any event, that his *status* as regards liability was higher than that of the usual fair association which, as the owner of exhibition grounds, grants a concession directly to the operator of such an amusement.

In recent years quite a body of law has grown up in relation to the liability for negligence in the operation of amusement apparatus. A number of these cases pass on the question of the liability of a fair association or an amusement park owner, charging a general fee for admission to the grounds, for the negligence of an independent contractor who furnishes attractions on the premises, and it is the general rule that such a defendant is, as the inviter of the patronage, under the obligation of exercising reasonable care to have and keep the premises and equipment reasonably safe for visitors. A defendant is not relieved of this duty by reason of the fact that he had leased a part of the premises or the equipment to an independent contractor. In one of the earlier cases (*Thompson v. Lowell, etc., Street R. Co.,* 170 Mass., 577, 49 N. E., 913, 40 L. R. A., 345, 64 Am. St. Rep., 323)* it was said:

"The fact that the exhibition was provided and conducted by an independent contractor would not wholly relieve the defendant from responsibility, provided it was  .  .  .  a kind that it would probably cause injury to a spectator, unless due precautions were taken to guard against harm."

See also, in harmony with the above case, *Richmond, etc., R. Co.* v. *Moore,* 94 Va., 493, 27 S. E., 70, 37 L. R.

A., 258; *Turgeon* v. *Connecticut Co.*, 84 Conn., 541, 80 Atl., 714; *Bernier* v. *Woodstock Agricultural Soc.*, 88 Conn., 558, 92 Atl., 160; *Sebeck* v. *Plattdeutsche Volkfest Verein*, 64 N. J. Law, 624, 46 Atl., 631, 50 L. R. A., 199, 81 Am. St. Rep., 512; 38 Cyc., 258.

A number of cases deal with the phase presented by the fact that the exhibitor, owner, and operator of such a device is a concessionary on a percentage basis, and they are in practical unanimity in holding that an association conducting a fair is liable to a patron for an injury due to a defect in the apparatus employed by a concessionary for the amusement of its patrons, where it thus receives as compensation for the concession a percentage of the sums paid by those who use the machine, when the defect could have been discovered in the exercise of reasonable care. *Stickel* v. *Riverview Park Co.*, 250 Ill., 452, 95 N. E., 445, 34 L. R. A. (N. S.), 659; *Hollis* v. *Kansas City, etc., Asso.*, 205 Mo., 508, 103 S. W., 32, 14 L. R. A. (N. S.), 284, and note; *Thornton* v. *Maine State Agricultural Fair*, 97 Me., 108, 53 Atl., 979, 94 Am. St. Rep., 488; *Texas State Fair* v. *Brittain*, 118 Fed., 713, 56 C. C. A., 499; and note to *Johnson* v. *Hot Springs Land & I. Co.*, L. R. A. 1915F, 689, 696.

*Wodnik* v. *Luna Park Amusement Co.*, 69 Wash., 638, 125 Pa., 941, 42 L. R. A. (N. S.), 1070, is an extreme and doubtful case on its facts (carrying the duty of the park owners to the point of inspecting simple tools), but the following declaration of general principles therein is sound:

"The appellants contend that, under this evidence, they cannot be held responsible for the injury. This position is not tenable. They were admittedly the owners, managers, and operators of Luna Park, and advertised its amusement features as a means of procuring the patronage of the public for their own pecuniary advantage. They received a part of the proceeds from the specific amusement feature in patronizing which the respondent was injured. He was there by their invitation. There was an implied representation that the instrumentalities for amusement which they advertised were reasonably safe. The fact that the amusement was furnished by a third party under an independent contract with the appellants in no manner relieved them from the duty to see that the appliances were reasonably safe for the use intended. The duty of exercising reasonable care for the safety of their patrons while engaged in the performance of the very purpose for which they were invited cannot be avoided in any such way."

In *Stickel* v. *Riverview Park Co.*, supra, the question determined was that there was an obligation on the part of a park company to see that the amusement device operated by its concessionary was itself reasonably safe for the purposes for which the public was invited to use it; and in *Babicz* v. *Riverview Park Co.*, 256 Ill., 24, 99 N. E., 680, it was held that the obligation extended to seats for patrons furnished by a concessionary, who thus paid a percentage of his gross profits to the park company.

We need not discuss cases which, while recognizing the above rule, distinguish such liability from that claimed to exist in cases where the personal negligence of the independent contractor or concessionary, or of his employee, is the cause of the injury. *Thomas* v. *Springer,* 134 App. Div., 640, 119 N. Y. Supp., 460; *Reisman* v. *Public Service Corp.,* 82 N. J. Law, 464, 81 Atl., 838, 38 L. R. A. (N. S.), 922. Here the injury resulted from the defective condition of the amusement apparatus.

We are cited no case which treats of the liability of a general concessionary who himself lets privileges to subconcessionaries, taking as compensation a percentage of the gross receipts of the latter. However, where, as here, the control of the amusements on the grounds and the selection of the character of the attractions and of their operators is with such general concessionary, we think it clear that the principles above set forth are applicable on the point of liability, and on the measure of care to be observed by Kennedy, when so treated.

The immediate operator of such an amusement contrivance is himself charged with the duty to his patrons of maintaining the place and device in a safe condition. *Scott* v. *University, etc., Asso.,* 152 Mich., 684, 116 N. W., 624, 17 L. R. A. (N. S.), 234, 125 Am. St. Rep., 423, 15 Ann. Cas., 515; *Bole* v. *Pittsburg Athletic Co.,* 205 Fed., 468, 123 C. C. A., 536, 46 L. R. A. (N. S.), 602; *Smith* v. *Cumberland, etc., Soc.,* 163 N.

C., 346, 79 S. E. 632, Ann. Cas., 1915B, 544, and note; 38 Cyc., 268.

We can conceive of no principle that would free from liability one who occupies the intermediate position held by appellee.

The appellant goes further and insists that Kennedy should be held liable as the immediate operator of the Ocean Wave, since he sold appellant the ticket, bearing his name, which entitled her to ride, thereby holding himself out as the one in charge.

This contention may prove to be material in a trial following a remand, since if Kennedy is to be held as the immediate operator of the device, a different rule as to the measure of care would be applicable to him.

The ticket was in the following form:

> "The C. T. Kennedy Shows
> "Admit one person to show using
> this number (59518)
> and only on date of sale.
> "Price 5c."

On back:

> "Kennedy 5c."

When appellant purchased the ticket, it was in her hands a token or evidence of a contract between the parties which the law implied as lying behind the ticket (*O'Rourke* v. *Street R. Co.,* 103 Tenn., 124, 52 S. W., 872, 46 L. R. A., 614, 76 Am. St Rep., 639, and cases cited), by the terms of which contract the exhibitor agreed to furnish appellant a ride with due diligence

on his part for her safety. The ticket was some evidence of the particular contractual relationship between Kennedy and appellant so contended to exist.

In either view, the case was one for the jury. The motion for peremptory instructions in favor of Kennedy was improperly sustained. Writ granted. Reverse the judgment of the court of civil appeals and remand for a new trial.